# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 1:13CV-00071-JHM**

**HALIFAX CENTER, LLC, ET AL.**                                          **PLAINTIFFS**

**V.**

**PBI BANK, INC.**                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, PBI Bank, Inc., for judgment on the pleadings [DN 20]. Fully briefed, this matter is ripe for decision.

### I.  STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion for judgment on the pleadings "is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)(citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511–12 (6th Cir. 2001)); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(c). Upon a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[,]" League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[.]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. BACKGROUND

Plaintiff, David G. Chandler, and a business associate entered into an agreement to purchase a promissory note from the United States Department of Housing and Urban Development ("HUD") in May of 2009 for a mortgage on a 165-unit apartment complex in Chicago, Illinois. The total purchase price was $9,145,020.06. HUD required an irrevocable and non-refundable deposit of $1,010,000, which Chandler paid. Chandler sought financing from PBI for $6,000,000 of the purchase price for the HUD note. The record does not reflect whether Chandler entered into the agreement to purchase the HUD Note prior to meeting with PBI to acquire financing. In his Amended Complaint, Chandler alleges that after he was committed to purchase the HUD Note, PBI representatives informed him that they would make the HUD loan only if he purchased an unrelated property located at 1020 Halifax Drive in Owensboro, Kentucky. At that time, the Halifax property was owned by an unrelated third-party. According to Chandler, PBI informed him that it held the loan and mortgage on the Halifax property and the loan was in default. At this time, Chandler had never seen the property, did not know the Halifax property owner, or have any relationship with the owner.

Chandler alleges that while he did not want to purchase the Halifax property, PBI required him to buy the Halifax property as a condition to making the $6,000,000 loan. PBI's written credit memorandum for the HUD loan expressly states that the purchase of the Halifax

2

Property is a condition of that loan. (Amended Complaint, Exhibit B.) PBI and Chandler entered into a written Agreement for Purchase and Financing of Real Property to buy the Halifax Property. The Halifax Property Agreement to Purchase was executed by Chandler and PBI, not the owner of the Halifax Property. It provides that "PBI agrees that it shall cause owner of the Property to sell the Property to [Chandler] for the sum of $1,253,675.74." (Halifax Property Agreement at 1, Amended Complaint, Exhibit C). The Agreement is dated June 16, 2009, and the purchase of the HUD Note closed the same day with PBI providing the $6,000,000 loan.

On June 29, 2009, Halifax Center, LLC, a limited liability company formed by Chandler, signed the promissory note for the Halifax property in the amount of $1,253,675.74, which Chandler understood was the unpaid balance of the original owner's loan from PBI. Chandler obtained the loan to purchase the property from PBI. The loan was a 24-month, interest-only loan at an interest rate of 3.25%. PBI required Chandler to personally guarantee $200,000 of debt. Chandler had the option at the end of the two-year term, to refinance or to pay PBI $200,000 and convey the Halifax Property to PBI.

In June of 2010, Chandler sought additional funds from PBI for the HUD property. The Halifax Loan was not due to mature for another year. Despite this fact, Plaintiffs assert that PBI insisted, as a condition of making the new loan, that the Halifax Loan be refinanced at an increased interest rate and that Chandler personally guarantee the entire indebtedness. On June 29, 2010, PBI made the loan to Chandler for the additional funds for the HUD property. PBI and Chandler executed a Change in Terms Agreement for the Halifax Loan refinance, and Chandler executed a Commercial Guaranty for the entire indebtedness on November 1, 2010.

Plaintiffs filed this cause of action alleging that PBI violated the anti-tying provisions of the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972 (Count I) and a state law claim of

economic duress (Count II).  Defendant now moves for a judgment on the pleadings as to the

Plaintiffs' anti-tying claim under Count I arguing that Plaintiffs cannot establish a colorable

claim under 12 U.S.C. § 1972.  Defendant further argues that Count I must be dismissed because

"one year after entering into the loan transaction said to have been improperly tied to a

$6,000,000 real-estate loan from PBI . . . , Plaintiffs reaffirmed that loan transaction by

refinancing through it through PBI, thereby waiving their statutory claim as a matter of law."

(Defendant's Memorandum in Support of Motion for Judgment on the Pleadings at 1.)

Defendant argues that Count II of the amended complaint should likewise be dismissed because

the facts alleged by Plaintiffs simply do not support an economic duress claim under controlling

Kentucky law.

### III.  DISCUSSION

#### A.  Anti-Tying Claim

Plaintiffs allege that PBI violated the BHCA by establishing an unlawful tying

arrangement. The BHCA provides, in relevant part, that:

> (1) A bank shall not in any manner extend credit, lease or sell
> property of any kind, or furnish any service, or fix or vary the
> consideration for any of the foregoing, on the condition or
> requirement—
>
> (A) that the customer shall obtain some additional credit, property,
> or service from such bank other than a loan, discount, deposit, or
> trust service; . . .
>
> (C) that the customer provide some additional credit, property, or
> service to such bank, other than those related to and usually
> provided in connection with a loan, discount, deposit, or trust
> service . . . .

12 U.S.C. § 1972(1). "The purpose of this provision is to prohibit anti-competitive practices

[that] require bank customers to accept or provide some other service or product or refrain from

dealing with other parties in order to obtain the bank product or service they desire." Highland Capital, Inc. v. Franklin Nat. Bank, 350 F.3d 558, 565 (6th Cir. 2003). In Highland Capital, the Sixth Circuit concluded that "a statutory violation [of Section 1972] is established by proof that a bank conveyed an intention to withhold credit unless the borrower fulfilled a 'prerequisite' of purchasing or furnishing some other product or service." Id. at 567. In order to establish an unlawful tying arrangement claim under the BHCA, a plaintiff must prove that "(1) the bank imposed an anti-competitive tying arrangement, that is, it conditioned the extension of credit upon the borrower's obtaining or offering additional credit, property or services to or from the bank or its holding company; (2) the arrangement was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the bank." Id. at 565; Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273, 278 (6th Cir. 1991); Midwest Agency Services, Inc. v. JP Morgan Chase Bank, N.A., 2010 WL 935450, *7 (E.D. Ky. March 11, 2010). "Section 1972 was not intended to interfere with the conduct of appropriate traditional banking practices, or to prohibit banks from protecting their investments." Parsons v. First Nat. Bank & Trust, 243 Fed. Appx. 116, 117 (6th Cir. 2007) (quoting Highland Capital, 350 F.3d at 565).

First, the Plaintiffs have satisfied the first element required of a claim under Section 1972 by alleging that PBI demanded that Chandler "take over and service the bad loan PBI had made to the Halifax Property's former owner" and to purchase the Halifax property as condition or requirement of obtaining the $6,000,000 loan for the HUD Note purchase. (Plaintiffs' Response at 8.) The record reflects that PBI's written credit memorandum for the HUD loan expressly states that the purchase of the Halifax Property is a condition of that loan. (Amended Complaint, Exhibit B.)

In support of its motion for judgment on the pleadings, PBI argues that since the

Plaintiffs actually purchased the Halifax property from a third-party, PBI's role in that transaction was simply being the provider of <u>another loan</u> for the purchase price of the property to Plaintiffs.  See <u>Exchange Nat. Bank of Chicago v. Daniels</u>, 768 F.2d 140, 143-44 (7th Cir. 1985).  However, Plaintiffs allege that PBI extended credit to Chandler on the requirement that he purchase an unrelated piece of property on which the bank had a mortgage that was currently in default.  "Conditioning the extension of credit to a bank customer on the requirement that the customer participate in the bank's bad loans to an unrelated customer surely is an anticompetitive practice proscribed by § 1972." <u>Palermo v. First Nat. Bank & Trust Co.</u>, 894 F.2d 363, 369 (10th Cir. 1990)(citing <u>Nordic Bank PLC v. Trend Group, Ltd.</u>, 619 F. Supp. 542, 557 (S.D.N.Y. 1985)).  See also <u>Libby v. Firstar Bank of Sheboygan, N.A.</u>, 47 F. Supp. 2d 135, 140-141 (D. Mass. 1999); <u>Johnstone v. First Bank Nat. Ass'n</u>, 1998 WL 565193, *6 (N.D. Ill. Aug. 31, 1998)("[A] loan arrangement which conditioned 'the extension of credit to a bank customer on the requirement that the customer participate in the bank's bad loans to an unrelated customer' would certainly be a blatant violation of the Act."); <u>Hammond v. Comptroller of Currency</u>, 878 F. Supp. 1438, 1449 (D. Kan. March 3, 1995)("[C]onditioning a loan on the purchase of an unrelated piece of property upon which the bank has a mortgage . . . is sufficient to constitute a finding that the practice is anti-competitive.").  Thus, courts that have examined this issue have held that such conduct is an anticompetitive practice under the BCHA.

Second, Plaintiffs have likewise pled facts to support the second element required in a claim under Section 1972.  Plaintiffs allege that PBI's extension of credit to them on the condition that they take over or purchase the Halifax Property on which PBI held a mortgage that was currently in default is not usual or traditional in the banking industry.  Plaintiffs' argument is supported by the case law.  For example, in both <u>Palermo</u>, 894 F.2d at 368 and <u>Quintana v. First</u>

Nat. Bank of Santa Fe, 125 F.3d 862, 1997 WL 618640, *3 (10th Cir. Oct. 6, 1997), the Tenth

Circuit held that

> [I]t is not an unusual banking practice for a lender to "evaluate its entire existing relationship" with a customer, including the "customer's related loans," when deciding whether to renew existing credit or extend new credit. Id. at 369-70. Nor is it an unusual practice, we held, for a bank to require a customer to guarantee affiliated debt before extending further credit. However, we held, this exemption does not extend to a situation where the lender conditions the extension of credit to a customer "on the requirement that the customer participate in the bank's bad loans to an unrelated customer." Id. at 369.

Quintana, 1997 WL 618640, *3 (citing Palermo, 894 F.2d at 368-370). See also Tri-Crown, Inc.

v. American Federal Sav. & Loan Ass'n, 908 F.2d 578, 584-585 (10th Cir. 1990)(Allegations

that savings and loan conditioned loan to plaintiff upon plaintiff's assumption of "other

nonperforming loans to unrelated or incidentally related customers" is sufficient to state a claim

for relief under anti-tying provision of TIRA and BHCA).

Third, Plaintiffs have sufficiently alleged that the tying arrangement benefited PBI. By

requiring Plaintiffs to purchase the Halifax property from an unrelated customer, Plaintiffs allege

that PBI eliminated a bad loan to the prior owner of the Halifax property, avoided the expense of

bringing a foreclosure action against the prior owner of the property, and avoided taking title to

the Halifax property and having to carry that property. Additionally, Plaintiffs maintain that by

essentially setting the purchase price of the property for the amount owed to the bank on the bad

loan, PBI caused Plaintiffs to pay substantially more for the Halifax Property than it was worth,

while the overpayment resulted in PBI being fully repaid for the bad loan made to the former

property owner. Thus, for the reasons set forth above, Plaintiffs have satisfied their obligation to

plead sufficient facts for the Court to infer a cause of action under to 12 U.S.C. § 1972.

## 1.  Injunctive Relief

PBI argues that the injunctive relief Plaintiffs seek under Count I is not permissible under the BHCA, and therefore, Plaintiffs' anti-tying claim in Count I fails as a matter of law.  While Plaintiffs seek permanent injunctive relief under 12 U.S.C. § 1976, Plaintiffs also request treble damages and an award of reasonable attorneys' fees and cost pursuant to 12 U.S.C. § 1975.  Plaintiffs seek over $200,000 in net losses incurred as of the date Plaintiffs filed suit, along with the difference between the purchase price and the actual value of the Halifax Property.  Given the Plaintiffs have requested money damages, the Court need not address the propriety of an award of injunctive relief in this matter at this time.

## 2.  Waiver

PBI argues that even assuming that the original tying arrangement in June of 2009 was a violation of 12 U.S.C. § 1972, Plaintiffs waived the anti-tying claim by voluntarily entering into a refinancing of the loan on the Halifax property and accepting as consideration PBI's loan of additional funds for the HUD deal.  In the Amended Complaint, Plaintiffs allege that in June of 2010, Chandler sought a loan from PBI for additional funds for the HUD property.  PBI insisted, as a condition of making the new loan, that the Halifax Loan be refinanced on terms more favorable to PBI, including an increase in the interest rate, a personal guarantee the entire indebtedness by Chandler, and removal of the option to obtain full release on the mortgage loan from PBI in exchange for conveying the property to PBI and paying PBI the sum of $200,000.

Waiver is the "voluntary and intentional surrender or relinquishment of a known right." Greathouse v. Shreve, 891 S.W.2d 387, 390 (Ky. 1995) (quoting Barker v. Stearns Coal & Lumber Co., 163 S.W.2d 466, 470 (Ky. 1942). Waiver may be expressed or implied.  It will not, however, be inferred lightly. American General Home Equity, Inc. v. Kestel, 253 S.W.3d 543,

553-54 (Ky. 2008).  The party who raises an affirmative defense has the burden of proof as to those defenses. Fonseca v. Consolidated Rail Corp., 246 F.3d 585, 590–91(6th Cir. 2001).

PBI does not contend that Plaintiffs expressly waived their tying claim.  Instead, PBI maintains that Plaintiffs impliedly waived the tying claim by refinancing or modifying the Halifax loan in June of 2010.  In support of this argument, PBI cites Anderson v. Tway, 143 F.2d 95 (6th Cir. 1944), in which the Sixth Circuit held "that one who renews or makes payment on a note after knowledge of defenses that may be interposed to its collection, waives them."  Id. at 102.  In the present case, Plaintiffs' tying claim is an independent statutory claim under BHCA, not a defense to PBI's enforcement of the note.  Therefore, Anderson does not appear applicable to the case.  PBI has not cited any authority that suggests Plaintiffs' statutory claim under BHCA can be waived by refinancing the tied-loan over a year later.  Additionally, PBI does not point to any other conduct or statements by the Plaintiffs to demonstrate an express or an implied waiver of the statutory tying claim.  Accordingly, construing the amended complaint in the light most favorable to Plaintiffs and accepting all well-pled factual allegations as true, PBI's motion for judgment on the pleadings on Plaintiffs' BHCA claim is denied.

**B.  Economic Duress**

Plaintiffs allege that PBI's conduct constituted economic duress asserting that the bank wrongfully and unlawfully coerced Plaintiffs into involuntarily accepting PBI's requirement that they purchase the Halifax property and that Chandler execute a personal guaranty.  PBI argues that judgment should be granted as a matter of law on Plaintiffs' economic duress claim because PBI demonstrated that the anti-tying claim is meritless and because Plaintiffs failed to establish that the bank engaged in, or threatened to engage in, an improper or unlawful act.

"Duress is where one, by the unlawful act of another, is induced to make a contract or

9

perform some act under circumstances which deprive him of the exercise of his free will." <u>Fears v. United Loan & Deposit Bank</u>, 189 S.W. 226, 232 (Ky. 1916). As discussed above, Plaintiffs have alleged a viable tying claim pursuant to 12 U.S.C. § 1972. The alleged tying arrangement satisfies the unlawful and wrongful act requirement of an economic duress claim. <u>See</u>, <u>e.g.</u>, <u>Nordic Bank PLC v. Trend Group, Ltd.</u>, 619 F. Supp. 542, 560 (S.D.N.Y. 1985)(business compulsion duress). Further, Plaintiffs allege that they were compelled to act against their free will by purchasing the Halifax Property in exchange for the HUD loan. <u>Id.</u> Construing the amended complaint in the light most favorable to Plaintiffs and accepting all well-pled factual allegations as true, the Court concludes that Plaintiffs state a plausible claim for economic duress. The remaining arguments raised by PBI are more appropriately addressed in a summary judgment motion. Accordingly, PBI's motion for judgment on the pleadings on Plaintiffs' economic duress claim is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, PBI Bank, Inc., for judgment on the pleadings [DN 20] is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

February 18, 2014

10